[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
An attorney brought action against a former client to recover fees for legal services performed in a marital dissolution. Both the attorney, Gerald H. Kahn, and the defendant, Ramonita Arrindell, represented themselves, thereby making this a truly pro se matter. In the plaintiff's complaint, three counts were alleged, namely: an express contract on which $14,502.60 is owed, a count of quantum meruit for which the same amount is alleged to be due, and finally, a tort, i.e. misrepresentations as to payment, wherein money damages are claimed also in the amount of $14,502.60. In addition to denying the essence of the plaintiff's claims, the defendant has filed a counterclaim in which she CT Page 12566 alleges a contract for a flat fee of $5000.00, and claims damages as a result of physical pain and emotional distress which the plaintiff's demands have inflicted upon her. Her total payments to the plaintiff are $7800. Her demand is $15,000.
 I
From the evidence presented, the court finds that the following facts were established: The defendant requested that the plaintiff represent her in a marital dissolution prior to November 16, 1994. On that date, the plaintiff purportedly sent a lengthy fee agreement with copy to the defendant. She was requested to sign and return the original document. The original document was never returned.
On or about November 30, 1994, the plaintiff filed "The Defendant Wife's Claims for Relief" in the domestic action in the Superior Court at Waterbury. The Claims for Relief contain information that the defendant herein, who was the defendant in the marital action, is a social worker earning $46,500.00 per annum, has two children, and has paid the majority of the marital expenses. Her husband, the plaintiff in the marital action, is alleged to earn $59,000 a year as a Waterbury schoolteacher and additional income by working at Sears during the summer. The claims for relief further allege that the husband was guilty of repeated and flagrant adulteries and of contributing very little to the family economy with the defendant herein having paid most or all of the expenses with respect to the down payments on the marital residences. The Special Claims for Relief requested support for two children at $288.00 per week, alimony in the amount of $50 per week, the even distribution of pensions, the marital residence in Oakville, CT to the wife, and with respect to three pieces of property in the parties' native Dominican Republic: Bayona to the wife, Palanque to the husband, and Sabana Grande to be sold and the proceeds divided equally or alternatively, a buyout of the wife's interest by the husband for $55,000 payable at a weekly rate over ten years.
A letter written by Ms. Arrindell on May 1, 1995 to Attorney Kahn evinces that Ms. Arrindell wanted child support and hoped to receive $35,000 in a proposed settlement. The court is unaware of the other aspects of the proposed settlement. The settlement conference never took place, however, and the case went to trial before Judge Dranginis in Waterbury on May 8, 1995. CT Page 12567
According to the plaintiff, Judge Dranginis vacated the trial and referred it to State Trial Referee, Hon. Morgan Kline, for a settlement conference on May 22, 1995. The settlement conference before Referee Kline never took place, nor was the case ever put back on the trial list by the plaintiff.
The plaintiff in his letters to Judge Dranginis and Referee Kline dated May 17, 1995, claimed that his trial obligations before Judge Bassick in Bridgeport prevented his appearance at the settlement conference. In fact, several letters introduced by the defendant between the plaintiff and Judge Dranginis' clerk, and the plaintiff and
Attorney Ginsberg, who represented the husband, concerned Attorney Kahn's inability to attend status conferences, motion hearings, and the taking of a deposition.[1]
Attorney Kahn presented five copies of billing statements he had sent to Ms. Arrindell between April 3, 1995 and July 13, 1995. These billing statements list the date of a charge, a nebulous one word description of said charge, and the total amount outstanding for a given billing period.[2] None of these invoices contain an itemization or break-down of charges, nor were specific charges listed. Although Ms. Arrindell made payments to Attorney Kahn, she never paid any of the bills in full.[3]
At trial, the plaintiff introduced worksheets indicating the charge for each particular service, but this information was never disclosed to the defendant. These worksheets were generated by the Time Slip computer program, and contain the same obscure description as the billing statements sent to clients. Unlike the statements, however these worksheets contain the number of hours Attorney Kahn claims to have: worked on a given activity. There are five vertical columns: the date, description of activity, the number of hours spent, the charge, and the total amount.[4]
These worksheets also calculate costs, tax, payments and refunds, and the total new balance owed by the client.
When this case was reached for trial in November 1995, the defendant represented herself and did not secure all that she desired. Previously, on or about July 6, 1995, Ms. Arrindell and Attorney Kahn argued about attorneys' fees and as a result of the verbal disagreement, Attorney Kahn withdrew his representation. CT Page 12568
 II
The court finds that the claims of both parties as to the existence of an express contract and as to the existence of any actionable tort were not proven. Christensen v. Bic Corporation,18 Conn. App. 451, 454 (1989). Therefore, this Memorandum will be concerned with the plaintiff's quantum meruit claim and the defenses raised thereto. A plaintiff is entitled to the remedy of quantum meruit when an implied contract for services existed between the parties. The plaintiff, therefore, should be allowed the reasonable value of services rendered. Rossetti v. NewBritain, 163 Conn. 283, 292, 303 A.2d 714 (1972). Implied contracts are determined when the parties manifest a course of conduct which implies a promise to pay for the reasonable value of services rendered. Burns v. Koellmer et al.,11 Conn. App. 375, 380, 527 A.2d 1210 (1987). The fact that Ms. Arrindell hired Attorney Kahn with the intention of paying him for his services is not in contention. Hence, this court must determine the reasonable value of Attorney Kahn's services.
The Rules of Professional Conduct prescribe applicable criteria in determining a reasonable fee: (1) The time and labor required of Attorney Kahn, the difficulty of Ms. Arrindell's marital dissolution, and the skill required for proper work; (2) The likelihood, if made known to Ms. Arrindell, that her employment of Attorney Kahn would preclude him from other employment for other clients; (3) The fee customarily charged in the area for similar services, (4) The amount involved in Ms. Arrindell's proceeding and the results obtained; (5) Time limitations imposed by Ms. Arrindell or the circumstances of her case; (6)The nature and length of the professional relationship between Attorney Kahn and Ms. Arrindell; (7) The experience, reputation and ability of Attorney Kahn. Finally, Ms. Arrindell is obligated to pay — any additional expenses. Rules of Professional Conduct 1.5.
Correlating the relevant Professional Conduct criteria to this case, the court finds: (1) Attorney Kahn claimed he spent 77.5 hours on Ms. Arrindell's divorce. The issues in the divorce were not complex, but rather atypical of present day divorce proceedings. Ms. Arrindell successfully represented herself in November 1995 sans legal education or practice; (2) Attorney Kahn did not inform Ms. Arrindell that her employment of him would preclude his other employment by other clients. In fact, Attorney Kahn repeatedly postponed matters concerning Ms. Arrindell's CT Page 12569 case, such as depositions and court appearances, in order to handle other cases; (3) The fee customarily charged in this area for such services approximates $200.00 to $235.00 per hour; (4) The amount involved was $35,000, plus the Oakville and Dominican properties. Attorney Kahn withdrew from Ms. Arrindell's case before procuring the divorce; (5) No time limits were imposed by Ms. Arrindell. Indeed, Attorney Kahn handled defendant's case at his leisure; (6) The professional relationship between Attorney Kahn and Ms. Arrindell was new; (7) Attorney Kahn has practiced law for 27 years; practicing solely family law, he purports to be a person of standing and a lecturer in his field. Yet in lieu of mirroring the apogee of professionalism, the plaintiff seemingly trifled with Ms. Arrindell's case. Attorney Kahn had a duty to his client to expedite her case, not harry her, opposing counsel, or Judge Dranginis for more time. Finally, court expenses in this case totaled $1513.90.
The relief Attorney Kahn seeks is $14,502.60. To reach this amount, Attorney Kahn multiplied the hours he spent on Ms. Arrindell's case by $235.00, added the amount of additional expenses, plus a 5% surcharge to reach the sum of $22302.60. Next, the plaintiff subtracted the $7800 Ms. Arrindell paid him during his legal representation.
The court questions both the number of hours billed to Ms. Arrindell and the hourly rate of $235.00. Quantum meruit must not be used as an improper billing smoke screen. It is axiomatic that the reasonableness of attorneys' fees must be proven. HartfordElectric Light v. Tucker 183 Conn. 85, 91. Under the circumstances of this case, Attorney Kahn failed to prove the validity of his fee.
The plaintiff was repeatedly unprepared to undertake Ms. Arrindell's case because of his voluminous caseload. It is not Ms. Arrindell's onus to pay for Attorney Kahn's services in situations where he is culpable. Attorney Kahn charged Ms. Arrindell $2073 for preparation and a hearing he requested in order to alert the judge that he was unprepared to bring her case to trial. Clearly, if Attorney Kahn had been prepared, the hearing would not have been necessary. In addition, Attorney Kahn billed Ms. Arrindell a total of $235.00 for letters he wrote to opposing counsel, as well as a rather cavalier note to a court clerk, begging more time because he was unprepared, too consumed by other cases, or too engaged with personal matters. CT Page 12570
The court finds the plaintiff's practice of charging the defendant for his own excuses unacceptable. Attorney Kahn has no claim to bill Ms. Arrindell for his excuses — including letters, telephone and personal conferences, as well as court appearances and the preparation thereof. The total amount charged for excuse purposes is $2308.
Moreover, the court calculates a total of $1175 charged to Ms. Arrindell by the plaintiff after the July 6th termination conversation between Attorney Kahn and the defendant. The notion that Ms. Arrindell should pay for Attorney Kahn's preparation and court appearance to formally withdraw from her case is untenable. Likewise, the court finds no reason for Ms. Arrindell to be billed a comprehensive 5% surcharge. Surcharges ought to be included as part of: the stipulated fee or alternatively, clients should be billed a surcharge when each particular occasion arises. The total amount surcharged was $989.95.
Accordingly, in light of the plaintiff's casual manner in handling; Ms. Arrindell's divorce, the amount involved, and the plaintiff's awareness of the defendant's financial situation, the charge of $235 per hour for services rendered is inequitable. The court may exercise its discretion in determining the amount of fees allowable since "courts have a general knowledge of what would be a reasonable attorney's fee for services which are fairly stated and described" Miller v. Kirshner, 225 Conn. 185,202, 621 A.2d 1326 (1993); Pearl v. Nelson, 13 Conn. App. 170,172, 534 A.2d 1257 (1988); Appliances Inc. v. Yost,186 Conn. 673, 680, 443 A.2d 486 (1982); Piantedosi v. Florida,186 Conn. 275, 279, 440 A.2d 977 (1982).
A charge of $22,302.60 for a divorce proceeding which Attorney Kahn never brought to conclusion is found by this court to be excessive. Thus, the court sets a fee of $200 per hour as reasonable, omits the 5% surcharge, the time billed after July 6, 1995, and any time billed in the creation, preparation or presentation of excuses. The court concludes that the total amount due and owing by the defendant, Ramonita Arrindell, to the plaintiff, Gerald Kahn, is $5731.20.[5]
Judgment for this amount is rendered for the plaintiff. Judgment for the plaintiff is also rendered on the defendant's counter claim.
Jerrold H. Barnett, J. CT Page 12571