## PAUL D. SHAPERO *v.* FRANK MERCEDE, JR.
### (SC 16628)

Sullivan, C. J., and Borden, Norcott, Katz and Vertefeuille, Js.

Argued September 10—officially released November 5, 2002

*Brenden P. Leydon*, for the appellant (plaintiff).

*Neal L. Moskow*, with whom, on the brief, was *Anthony J. La Bella*, for the appellee (defendant).

Opinion

SULLIVAN, C. J. The plaintiff, Paul D. Shapero, appeals, following our grant of certification, from the judgment of the Appellate Court reversing the judgment of the trial court in his favor and remanding the case to the trial court with direction to render judgment for the defendant, Frank Mercede, Jr. The trial court had rendered judgment in the case in accordance with the report of the attorney trial referee (referee) to whom the matter had been referred. The report had recommended judgment for the plaintiff in the amount of $22,500 in his action seeking, inter alia, quantum meruit damages for legal services provided to the defendant. In reaching its decision, the Appellate Court concluded that, because the referee's recommendation had not been supported by sufficient evidence of the value of the plaintiff's services, the trial court improperly had rendered judgment on the report. *Shapero* v. *Mercede*, 66 Conn. App. 343, 344, 784 A.2d 435 (2001). We reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "In May, 1995, the defendant hired the plaintiff, an attorney, to represent him in a tax appeal to reduce the assessment on two commercial properties owned by the defendant. On May 17, 1995, the defendant paid the plaintiff a $5000 retainer and entered into an agreement to pay the plaintiff on a contingency fee basis. In May, 1997, the defendant discharged the plaintiff and hired substitute counsel on an hourly basis. Within four months, substitute counsel had successfully concluded the defendant's appeal. . . . The defendant paid substitute counsel $15,000 for services rendered in resolving the matter.

"On February 8, 1998, the plaintiff filed an action against the defendant to recover legal fees under causes of action sounding in quantum meruit, breach of contract, unjust enrichment, violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and fraud. The defendant thereafter alleged two special defenses: (1) that the plaintiff was paid for his work, and (2) that the plaintiff breached the standard for professional conduct within the legal community. On December 28, 1999, the matter was heard by the referee. During the hearing, the plaintiff presented no evidence relating to the hourly rate that he charged the defendant. The plaintiff testified that he had reasonably spent 100 hours on the defendant's case.

"On May 31, 2000, the referee filed a report recommending judgment for the plaintiff in the amount of $27,500 with $5000 credited against the retainer. The referee arrived at those figures by calculating the plaintiff's hourly rate at $275 multiplied by 100 hours. On June 19, 2000, the defendant filed an objection to the referee's report, asserting that the plaintiff had failed to meet his burden of proof with regard to the value of his services and that the referee had failed to make

appropriate findings of fact to support her conclusions. On July 11, 2000, the court, *Karazin, J.*, accepted the referee's report over the defendant's objections. On September 6, 2000, the court denied the defendant's motion for reargument. On October 2, 2000, the plaintiff filed a motion for articulation. In response, the court on November 6, 2000, filed a memorandum of decision upholding the referee's findings and her crediting of the $5000 retainer against the amount of the judgment." *Shapero* v. *Mercede*, supra, 66 Conn. App. 345–46.

The defendant appealed to the Appellate Court, claiming that the trial court "improperly (1) awarded the plaintiff damages on his claim for nonpayment of legal fees when the . . . referee . . . had found that no evidence as to the value of the plaintiff's services had been introduced at the hearing, (2) awarded the plaintiff damages on his claim for nonpayment of legal fees when the referee based her decision on evidence outside the record, and (3) awarded the plaintiff damages on his claim for nonpayment of legal fees where the referee's conclusions are internally inconsistent and unsupported by findings of fact." Id., 344. In response, the plaintiff maintained that: "(1) the defendant's claims are not properly reviewable, as he did not provide the trial court with a transcript of the hearing conducted by the referee, (2) the plaintiff introduced sufficient evidence for the court to determine fairly the value of his services, [and] (3) the defendant's brief is inadequate for review . . . ." Id. The plaintiff also filed a cross appeal, maintaining that the trial court improperly had permitted the defendant to obtain a credit of $5000 when the defendant had not pleaded a special defense or setoff. Id.

The Appellate Court agreed with the defendant with regard to his first claim and, accordingly, declined to address his other claims. Id., 346. The court rejected the arguments made by the plaintiff in response to that

claim; id., 348–53; and did not reach the plaintiff's claim on the cross appeal.[1] Id., 353.

We granted the plaintiff's petition for certification to appeal, limited to the following issues: "1. Did the Appellate Court properly reverse the trial court's adoption of the referee's report on the amount of attorney's fees due the plaintiff? 2. If the Appellate Court properly reversed the trial court's adoption of the referee's report, should the matter be remanded for a new trial?" *Shapero* v. *Mercede*, 258 Conn. 944, 945, 786 A.2d 430 (2001). With regard to the first issue, we reverse the judgment of the Appellate Court. Accordingly, we do not reach the second issue.

The plaintiff claims that the Appellate Court improperly concluded that there was insufficient evidence upon which the referee could recommend and the trial court could award attorney's fees. We agree.[2]

We begin with the applicable standard of review. "[A] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . .

---

[1] Although the Appellate Court stated that it disagreed with the plaintiff's claim regarding the $5000 setoff; *Shapero* v. *Mercede*, supra, 66 Conn. App. 353; the court went on to say that "[b]ecause we have concluded that the referee acted outside her discretion in assigning a value to the plaintiff's services, we need not reach the plaintiff's claim on cross appeal." Id.

[2] Because we reverse the Appellate Court's judgment on this claim, we need not reach the plaintiff's claim that the Appellate Court's review of the defendant's insufficiency claim was improper because the defendant had failed to provide to the trial court a transcript of the hearing before the referee.

"The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Meadows* v. *Higgins*, 249 Conn. 155, 162, 733 A.2d 172 (1999).

The crux of the Appellate Court's opinion is that "the plaintiff produced no evidence showing either his rate of compensation or that of prevailing rates in the legal community. There was insufficient evidence on which to base a finding of attorney's fees." *Shapero* v. *Mercede*, supra, 66 Conn. App. 348. The Appellate Court did not consider, however, whether there was other evidence that could have supported the fee award.[3] We conclude that there was such evidence.

---

[3] The Appellate Court cites several cases in support of its conclusion that "[n]o award of attorney's fees . . . may be made when the evidence on which to base the award is insufficient." *Shapero* v. *Mercede*, supra, 66 Conn. App. 348, citing *Appliances, Inc.* v. *Yost*, 186 Conn. 673, 680, 443 A.2d 486 (1982); *Lebowitz* v. *McPike*, 151 Conn. 566, 568, 201 A.2d 469 (1964); *Gruskay* v. *Simenauskas*, 107 Conn. 380, 387, 140 A. 724 (1928); *City Savings Bank of Bridgeport* v. *Miko*, 1 Conn. App. 30, 38, 467 A.2d 929 (1983). Although this is a correct statement of the law, the cases cited are distinguishable from the present case. Specifically, in none of the cases cited has this court or the Appellate Court ruled that competent evidence regarding the value of legal services was introduced but that it did not suffice to support a finding regarding that value. Indeed, in the first case cited by the Appellate Court, we *reversed* the ruling of the trial court and held that a brief in which counsel's services were itemized, when taken with "the court's own general knowledge," constituted sufficient evidence from which to determine the amount of "reasonable attorney's fees." *Appliances, Inc.* v. *Yost*, supra, 681. Therefore, in *Appliances, Inc.*, we required neither evidence regarding the rate ordinarily charged by the plaintiff in that case nor evidence of prevailing rates in the community. In one of the other cases cited by the Appellate Court, unlike in the present case, no evidence of the value of the services whatsoever had been introduced. *Lebowitz* v. *McPike*, supra, 568. In another, the Appellate Court determined that the awarding of attorney's fees would

The measure of damages in quantum meruit is the value of the services rendered. See, e.g., *Rossetti* v. *New Britain*, 163 Conn. 283, 292, 303 A.2d 714 (1972). "Quantum meruit literally means as much as he has deserved . . . ." (Internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 255 Conn. 390, 401, 766 A.2d 416 (2001), quoting Black's Law Dictionary (7th Ed. 1999). In her report, the referee cited *RisCassi & Davis, P.C.* v. *Peck*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV89-369798 (September 27, 1991) (6 C.S.C.R. 932), as authority for the types of evidence relevant to the value of an attorney's services in a suit for quantum meruit.

In *RisCassi & Davis, P.C.*, the Superior Court noted that "[q]uantum meruit . . . is not limited to hours spent times hourly rate. Time and labor required in a case is but one factor to be considered in determining a reasonable attorney's fee on the basis of quantum meruit. Other such factors as those outlined in Rule 1.5 [of the Rules of Professional Conduct] can, when pertinent, also be taken into consideration in arriving at a reasonable attorney's fee."[4] Id. *RisCassi & Davis,*

be improper because the post-deficiency-judgment services for which the fees were sought had not yet been performed, unlike those in question in the present case, and might never be performed in the future. *City Savings Bank of Bridgeport* v. *Miko*, supra, 38. That court ruled that "[p]ermitting an award of legal fees depends upon a factual finding concerning work already performed." Id. In the remaining case cited by the Appellate Court, the only evidence of the value of the attorney's services was in the form of opinion testimony provided by three witnesses in response to a hypothetical question regarding the attorney's prior experience. *Gruskay* v. *Simenauskas*, supra, 384–85. An objection to the question was made on the grounds that it did not accurately reflect the actual level of experience of the attorney seeking compensation. Id., 384. This court concluded that the trial court improperly had overruled this objection, and held that "[w]ith the hypothetical question excluded, there was no sufficient evidence before the court upon which to predicate" a conclusion regarding the value of the services. Id., 387. Here, as described later in this opinion, there is such evidence.

[4] Rule 1.5 of the Rules of Professional Conduct provides in relevant part:

"(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

*P.C.*, is consistent with our case law, in which we repeatedly have stated that the determination of reasonable attorney's fees is not limited to hours spent times hourly rate. See, e.g., *Andrews* v. *Gorby*, 237 Conn. 12, 24, 675 A.2d 449 (1996), citing rule 1.5 and noting that "[t]ime spent is but one factor in determining the reasonableness of an attorney's fee"; *Appliances, Inc.* v. *Yost*, 186 Conn. 673, 681, 443 A.2d 486 (1982) (court's general knowledge of value of attorney's services and itemized list of such services were sufficient evidence upon which fee could be determined).

In the present case, the referee based her finding that the appropriate hourly rate was $275, rather than $500 as requested by the plaintiff, upon other subordinate findings relevant to the value of the plaintiff's services. With regard to the plaintiff's experience and reputation, the referee noted that "[t]he fact finder recognizes that the 'value added' choice of the plaintiff to handle the defendant's tax matters involved the recognition of the plaintiff's notable service as probate judge and as corporation counsel with the city of Stamford and other public boards and agencies and his lifelong service to the community and to the legal profession." She also found that "[t]he arguments were complicated by the fact that a claim of environmental contamination" was involved that "could [have] trigger[ed] a broader base for application of tax relief," and that "[t]here is an element of

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) The likelihood, if made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) The fee customarily charged in the locality for similar legal services;

"(4) The amount involved and the results obtained;

"(5) The time limitations imposed by the client or by the circumstances;

"(6) The nature and length of the professional relationship with the client;

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) Whether the fee is fixed or contingent. . . ."

novelty to [the] plaintiff's presentation to the tax assessor regarding the assessment method and the list year in question . . . ."

The referee's evidentiary findings with regard to the plaintiff's experience and reputation, and the novelty and complexity of the legal issues addressed in the course of his work on behalf of the defendant, have not been challenged and are therefore binding on this court.[5] See, e.g., *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 164, 757 A.2d 14 (2000). In addition, "[w]e have repeatedly held that courts have a general knowledge of what would be reasonable compensation for services which are fairly stated and described." (Internal quotation marks omitted.) *Piantedosi* v. *Floridia*, 186 Conn. 275, 279, 440 A.2d 977 (1982). We have applied this principle with regard to attorney's fees.[6] See, e.g., *Andrews* v. *Gorby*, supra, 237 Conn. 24; *Appliances, Inc.* v. *Yost*, supra, 186 Conn.

---

[5] The referee also found that the plaintiff "reasonably spent 100 hours in connection with his representation of the defendant." This finding has been challenged by the defendant. In his objection to the acceptance of the report, the defendant stated that this finding was "simply irreconcilable" with the referee's finding that the plaintiff "did not keep time records on the matter." The referee also found, however, that the plaintiff had testified that he had worked in excess of 100 hours on the matter. The correctness of the referee's finding that there was such testimony is acknowledged by the defendant in his brief and has not been challenged. "[N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." (Internal quotation marks omitted.) *Smith* v. *Smith*, 183 Conn. 121, 123, 438 A.2d 842 (1981). Accordingly, the unchallenged finding that there was testimony by the plaintiff as to the number of hours he had worked on the defendant's case provides sufficient support for the conclusion that the plaintiff had worked 100 hours. The defendant's claim that it was "improper" for the referee to base her conclusion upon the plaintiff's testimony is without merit.

[6] A court may employ its general knowledge of the value of attorneys' services even when it assesses the value of services performed in a case that was not before the same court. *Appliances, Inc.* v. *Yost*, supra, 186 Conn. 680–81, quoting the trial court's statement that "this court was not the judge who tried the case" and holding that the trial court nonetheless could have based an award on such knowledge.

681. Likewise, attorney trial referees, who are required to be "qualified members of the bar"; General Statutes § 52-434 (a) (4); may apply their general knowledge of the reasonable value of legal services that have been fairly described. Cf. *Pearl* v. *Nelson*, 13 Conn. App. 170, 172, 534 A.2d 1257 (1988) (courts have general knowledge of what constitutes reasonable attorney's fee, but "the subject is not one which is within the ordinary knowledge and experience of jurors").

We conclude that this general knowledge and the referee's unchallenged findings relevant to the value of the plaintiff's services provided sufficient support for the challenged finding that $275 per hour was an appropriate measure of the value of those services. Accordingly, we conclude that the Appellate Court's reversal of the trial court's judgment was improper.

As noted previously, the defendant makes two other arguments in support of his contention that the Appellate Court's reversal of the trial court's judgment was proper. Each rests solely and explicitly on the claim that there had been insufficient evidence to support the referee's finding regarding the rate of compensation. The first of these arguments is that the referee based her decision on evidence outside the record. This argument is based only on the assertion that evidence found in the record cannot suffice to support the referee's findings. Because we have concluded that the challenged finding is amply supported by the unchallenged findings and the referee's general knowledge of the value of attorneys' services, we reject this claim.

Similarly, the defendant argues that the report of the referee is internally inconsistent. This argument is based only on the fact that the report states both that there was no evidence of the plaintiff's opinion of the value of his services on an hourly basis and that a rate of $275 is reasonable. The absence of testimony from

the plaintiff as to the value of his services is not inconsistent with a finding that $275 per hour is appropriate, because, as noted previously, such a finding can be, and was, based on other evidence.

The judgment of the Appellate Court is reversed and the case is remanded to that court for consideration of the plaintiff's claim on cross appeal regarding the propriety of the $5000 setoff.

In this opinion the other justices concurred.